UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Willie Joe Stalling,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY[1],

        Defendant.

**Hon. Hugh B. Scott**

11CV779A

**Report
and
Recommendation**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 7 and 9).

## **INTRODUCTION**

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

---

[1]For convenience, defendant will be identified by the official title only. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (action survives despite change in office of Commissioner).

## PROCEDURAL BACKGROUND

The plaintiff, Willie Joe Stalling ("Stalling" or "plaintiff"), filed an application for disability insurance benefits on July 28, 2008. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated September 24, 2010, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on July 29, 2011, when the Appeals Council denied plaintiff's request for review.

Plaintiff subsequently commenced this action (Docket No. 1). The parties have moved for judgment on the pleadings.

## FACTUAL BACKGROUND[2]

Stalling asserts that he became disabled on June 16, 2008[3] due to various conditions including an irregular heartbeat, weak heartbeat, stroke, left sided cerebrovascular accident, deficits in the right side of his face and right hand, paroxysmal atrial fibrillation, hypertension and cardiomyopathy. (R at 106, 139). He was 47 years old on the alleged onset date. He has a high school education and his past relevant work was that of a "paver," a medium exertional semi-skilled position. (Docket No. 10 at 2).

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

[3] The parties both use the June 16, 2008 as the date of the alleged onset of disability. Stalling's September 8, 2008 application stated that his disability began on May 25, 2008. (R. 106).

2

On June 16, 2008, Stalling went to the emergency room at Niagara Falls Memorial Medical Center (hereinafter "Niagara Falls Memorial"), after suffering epigastric (upper abdomen) pain on exertion for the prior few weeks (Tr. 184, 272). The attending physician, Dr. Gerald Gorman, noted that Stallings "admit[ed] that it started 3d ago after he used cocaine for the first time in over 5 yrs" and noted that the "onset of symptoms reported as gradual" (R. 184). A toxicology screen performed on the same day revealed negative results for cocaine metabolites and other controlled substances (R.199, 213). An EKG was performed and Dr. Gorman diagnosed Stalling as suffering from "atrial fibrillation/flutter with RVR (new onset)," that is, rapid ventricular rate (R. 182). A subsequent echocardiographic report dated June 18, 2008 revealed an ejection fraction of 25-30% (R. 203). Upon discharge on June 20, 2008, Stalling was diagnosed with atrial fibrillation and chronic back pain (R. 274).

On July 10, 2008, Stalling was again admitted to the Niagara Falls Memorial after experiencing right hand numbness and weakness (R. 267-8). His mother and sister told the emergency room staff that Stalling was speaking slower than normal (R. 267). An MRI of the plaintiff's brain done on July 11, 2008 revealed "a 2cm acute infarct in the deep white matter of the left parietal lobe" (R. 217). Dr. Gunseli Sarpel, M.D., diagnosed Mr. Stalling with "CVA, left hemisphere with right-sided findings, acute, most likely embolic" (R. 259). This event has been characterized as a stroke. (R. 306).

Stalling went to the Niagara Falls Memorial emergency room again on August 9, 2008, with chest pain radiating into his left arm (R. 265-266) and then again on August 12, 2008 for an overnight stay as he was complaining of "chest discomfort and noted to have new onset atrial fibrillation" (R. 480-481). He went to the emergency room on August 14, 2008, and then on

August 18, 2008 with severe chest pain that onset while he was resting (R. 263-264). On September 3, 2008, Stalling was admitted to Niagara Falls Memorial emergency room with complaints of substernal chest pain and shortness of breath (R. 650). He was discharged on September 5, 2008 (R. 650-651). The plaintiff was readmitted to Niagara Falls Memorial due to chest pains on September 13, 2008, requiring a three day stay (R. 632-633). During that hospital stay, a toxicology test performed on September 13, 2008 was negative for cocaine metabolites and other controlled substances (R. 300, 647). Stalling presented again to the Niagara Falls Memorial emergency room on September 19, 2008, with severe left-sided chest pain and was discharged the same day. (R. 634-635). An echocardiographic exam from September 24, 2008 revealed a diminished left ventricular ejection fraction at 42% (R. 277).

On November 6, 2008, Stalling came under the care of cardiologist Dr. Robert Neufeld, M.D. (R. 467-526). In his December 17, 2008 report, Dr. Neufeld notes that Stalling continued to have episodes of sharp pain in the left side of his chest which last about 5-10 seconds and that this had been going on for many months unchanged. (R. 475). In addition to his continuing care with Dr. Neufeld, Stalling consulted with cardiologist Dr. Chee H. Kim, M.D. on November 3, November 9, 2009 and December 2, 2009 (R. 496-498). In a report dated October 16, 2009, Dr. Neufeld notes that Stalling had frequent episodes of a sharp left chest pain. and had frequent episodes of palpitations at rest with associated dyspnea (shortness of breath) (R. 471). In a report dated November 3, 2009, Dr. Kim states that Stalling was having almost daily episodes of palpitations that lasted from 5 to 30 minutes at a time and periodic dizziness (R. 498). In a report dated January 5, 2010, Dr. Neufeld noted that Stalling had no cardiac complaints and his

recent cardiopulmonary test was unremarkable (R. 467). An echocardiogram of December 14, 2009 showed that his ejection fraction was normal at 55% (R. 467).

The record reflects that Stalling continued to experience symptoms related to the 2008 stroke. In a report dated July 10, 2008, Dr. Michelle Velasquez, noted upon physical examination that Stalling had "4/5 muscle strength on the right hand" (R. 267). On December 21, 2009, Dr. Sumera Shah noted upon clinical exam that Stalling still had right hand weakness of 4/5 (R. 555). At the hearing on September 1, 2010, Stalling testified that he often drops things that he tries to pick up with his right hand (R. 28).

Stalling also asserts a history of chronic low back pain to the late-1990s or 2000 (R. 26, 257, 307), which he claims to have aggravated on July 3, 2006 after falling off a balcony onto a pickup truck (R. 26, 231, 307). An X-ray performed on December 23, 2008 showed "moderate degenerative disc disease at L3-L4 level with sclerosis of the vertebral bodies and anterior and lateral osteophytes" (R. 311). With respect to back pain, Stalling has taken Motrin in 2008 (R. 226), Darvocet in 2009 (R. 542), and Tramadol in 2010 (R. 548). Dr. Melvin Dyster wanted to order an MRI of his lumbar spine, but lack of insurance prevented Stalling from obtaining one (R. 226, 228, 231, 232). On September 29, 2008, Dr. Dyster also performed a physical examination of Stalling and found decreased range of motion in his low back (R. 232). On August 28, 2009; October 19, 2009; and November 10, 2009; straight leg raise tests performed by Dr. Dyster were positive for left sided pain (R. 546, 548, 550).

On December 23, 2008, Stalling was seen for consultative exam Dr. Kathleen Kelley (R. 306-311). Dr. Kelley made the following diagnoses: (1) "history of atrial fibrillation with flutter, on Coumadin and beta blockers at this time with subsequent stroke ... and with persistent chest

5

pain intermittently;" (2) chronic back pain without radiculopathy, weakness, or bladder/bowel compromise, intermittent; (3) hypercholesterolemia; and (4) Probable lipoma right back (R. 309). Dr. Kathleen Kelley also noted a positive straight leg raise bilaterally at 45% during her physical examination (R. 308).

Dr. Kelley opined that Stalling "should refrain from working around heights, sharps, or heavy equipment due to being on Coumadin." (R. 309). She further indicated that "lifting, carrying, reaching for markedly heavy objects or pushing or pulling on markedly heavy objects without comfort breaks may be difficult with his right upper extremity due to perceived weakness right hand" (R. 309). She also stated that he should refrain from smoking or respiratory irritants due to a history of heart disease (R. 309-310). Dr. Kelley concluded there were no other obvious limitations at that examination (R. 310).

On December 23, 2008, Stalling underwent a Psychiatric Consultative Evaluation with psychologist Thomas Ryan, Ph.D. (R. 312-315). Dr. Ryan diagnosed Stalling as suffering from Polysubstance abuse disorder (R. 314). Dr. Ryan opined that Stalling "has significant limitations perhaps in his ability to make appropriate decisions" (R. 314). Dr. Ryan further indicated that Stalling's examination results "are consistent with psychiatric problems which may interfere to some degree on a daily basis" (R. 314). Dr. Ryan concluded that Stalling had no significant limitations in his ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, or to relate adequately with others and deal with stress (R. 314). He recommended that Stalling seek drug and alcohol treatment and that his prognosis was "guarded as he is not in treatment." (R. 315). The record contains a Psychiatric Review Technique form dated January 15, 2009 by "Totin, M."

(R. 341). This appears to be a consultative non-examining review which found that Stalling suffered from a Substance Addiction Disorder, but that this impairment is a not severe (R. 341, 353). This review also asserts that Stalling had mild functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace (R. 351).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience,

7

engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington, supra, 37 F.3d at 1442.

In the instant case, the ALJ determined that the plaintiff suffered from the following severe impairments: status post cardiovascular accident causing right hand weakness; atrial fibrillation; obesity; degenerative disc disease and low back pain." (R. 13). The ALJ found that while the impairments caused "more than minimal functional limitations" they did not meet or equal the listings in Appendix 1 of the regulations. (R. 13). The ALJ found that Stalling retained the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567 and 416.967(b) "except that the right hand can be used to steady whatever the left hand [is] lifting or carrying [and that Stalling can] occasionally stoop." (R. 14). In reliance upon the testimony of Jay Steinbrenner, a vocational expert (R. 41), the ALJ determined that the plaintiff could perform the job duties of a cashier or a cafeteria attendant. (R. 17-18).

Hypothetical Question Posed to Vocational Expert

The plaintiff argues that the ALJ erred by not including all of the plaintiff's impairments in the hypothetical posed to the vocational expert. In this regard, the ALJ posed the following hypothetical: "I have a young person, 12th grade, light level of exertion, can use his dominate right hand, is steady when he lifts with the left hand." (R. 42). The plaintiff asserts that the ALJ failed to note that Stalling was restricted from exposure to respiratory irritants due to a history of heart disease and from working with sharp instruments (R. 314). (Docket No. 11 at 12). The plaintiff also asserts that the ALJ failed to adequately assess the plaintiff's limitation in using his right hand as a result of his stroke as well as his psychological limitations (Docket No. 11 at pages 20, 24).[4] A vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. Parker v. Harris, 626 F.2d 225, 231 (2d Cir.1980). Hypothetical questions constructed to assist a vocational expert in determining whether there are any employment possibilities for a claimant are defective where they do not account for his actual limitations. Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir.1981); see also Gilliam v. Califano, 620 F.2d 691, 693–694 (8th Cir.1980). Vocational testimony elicited by hypothetical questions that fail to relate with precision to the

---

[4] The plaintiff also argued that the ALJ erred in failing to consider Stalling's cerebrovascular accident to be a severe impairment. (Docket No. 11 at 22). In listing the impairments the ALJ determined to be severe, the ALJ referred to the plaintiff's "status post *cardiovascular* accident causing right hand weakness. (R. 13). The defendant asserts that this was a typographical error in that the ALJ intended to state "*cerebrovascular* accident" (Docket No. 14 at 6). The context of the language used by the ALJ, referring to the right hand weakness, along with the ALJ's subsequent discussion of the limitations resulting from the fact that Stalling suffered "an acute infarct in the left parietal lobe of the brain, causing weakness in the right side of his body" (R. 15), support the contention that the ALJ intended to refer to a "cerebrovascular accident," and not a "cardiovascular accident" when listing the plaintiff's severe impairments.

physical and mental impairments of a claimant is not substantial evidence on which an ALJ may base a decision. Bradley v. Bowen, 800 F.2d 760, 763 (8th Cir.1986).

The defendant does not dispute that the hypothetical does not include any reference to the plaintiff's restriction from exposure to respiratory irritants, his inability to be around sharp instruments, or any psychological limitations. The defendant argues that the plaintiff has failed to assert that the vocational expert's testimony was faulty or that the ALJ's logic was errant. (Docket No. 14 at 2). However, such assertions are implicit in the plaintiff's arguments. The record in this case restricts the plaintiff from being around respiratory irritants and sharp instruments. The plaintiff asserts that a cafeteria attendant would likely be exposed to sharp instruments in the form of knives used in the preparation and serving of food. (Docket No. 12). It may be likely that both cashiers and cafeteria attendants could be exposed to respiratory irritants in the form of cleaning solutions commonly used in supermarkets and restaurants. Neither the ALJ, nor the Vocational Expert addressed this issue. Further, it is noted that although the ALJ found that the plaintiff suffers from a severe impairment due to chronic low back pain and degenerative disc disease (R. 13, 257, 307, 311, 226, 542, 548), he did not advise the vocational expert of that impairment in constructing his hypothetical. Because the ALJ's hypothetical failed to account for these various limitations, the ALJ's determination that Stalling is capable of performing light work is not supported by substantial evidence. Mathews v. Barnhart, 220 F.Supp.2d 171 (W.D.N.Y. 2002)(The ALJ's determination that plaintiff was capable of performing the jobs of information clerk and surveillance systems technician is not supported by substantial evidence. Specifically, the ALJ erred by constructing hypothetical questions for the vocational expert that failed to include all of the plaintiff's non-exertional

limitations.).  This matter should be remanded for further administrative proceedings consistent with the above.

Closed Period of Disability

The plaintiff argues that the ALJ failed to consider a closed period of disability under 20 C.F.R. §§ 404.1529, 416.929, 404.1594 and 416.994. (Docket No. 11 at 21).  The term disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1).  Thus, if an individual is unable to engage in substantial gainful activity for a period of more than 12 months due to an impairment or combination of impairments, the individual is entitled to a closed period of disability. Hurley v. Astrue, 714 F.Supp.2d 888 (N.D. Ill. 2010)(ALJ should have considered whether claimant's decedent was entitled to seventeen-month closed period of disability between alleged onset date and date doctor released him to return to work).

In the instant case, the ALJ found that the plaintiff suffered from cardiac impairments. (R. 15).  The record reflects that the plaintiff suffered a cardiac event on June 16, 2008 (R. 106, 139).  The ALJ acknowledged that Stalling's ejection fraction was 25-30% "which is considered low."  (R. 15). In September of 2008, the tests revealed that the plaintiff's ejection fraction was at 40% "still lower than average."  (R. 15).  The next test reflecting the plaintiff's ejection fraction was in December of 2009, reflecting that it had improved to 55% and was considered in normal range. (R. 15). The ALJ noted that the plaintiff underwent cardiac catheterization in December of

2008 and radiofrequency ablation of the atrial flutter circuit in November of 2009, and that following the surgery in November of 2009, the plaintiff stated that the had fewer episodes of sharp, chest pain and no palpations or dyspnea on exertion. (R. 15). The plaintiff argues that the ALJ should have considered whether the plaintiff was disabled for a closed period of disability from June 16, 2008 until December 14, 2009. The Court agrees. The ALJ should have considered whether the plaintiff's ejection fraction remained sufficiently below normal for a period of more than 12 months, such that, either alone or in combination with the plaintiff's other impairments, Stalling was unable to engage in substantial gainful activity for that period. In light of the record in this case, the ALJ erred in not considering whether Stalling was entitled to a closed period of disability. It is recommended that the matter be remanded for further administrative proceedings consistent with the above.

Other Issues

The plaintiff also argues that the ALJ erred in failing to properly assess the plaintiff's credibility relating to how his impairments impact his residual functional capacity. (Docket No. 11 at 13).

A claimant's statements of pain or other subjective symptoms cannot alone serve as conclusive evidence of disability. Genier v. Astrue, 606 F.3d 46, 49 (2d. Cir.2010) (citing 20 C.F.R. § 1529(a)). In evaluating a claimant's assertions of his subjective symptoms, the ALJ must follow a two-step analysis. Id. First, the ALJ determines if a claimant has a "medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). Second, if an impairment of that nature is present, the ALJ

13

must then determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the administrative record. Id. (alteration in original) (quoting 20 C.F.R. § 404.1529(a)) (internal quotation marks omitted). If the plaintiff offers statements about pain or other symptoms that are not substantiated by the objective medical evidence, "the ALJ must engage in a credibility inquiry." Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir.2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)). In making this credibility determination, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; (6) other measures taken to relieve symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3) (i)-(vii); see also Meadors, 370 F. App'x at 184 n. 1. The ALJ, however, is not required to discuss all seven factors in his decision as long as the decision includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight. Snyder v. Barnhart, 323 F.Supp.2d 542, 546–47 & n. 5 (S.D.N.Y.2004).

In this case, the ALJ gave "no weight" to the plaintiff's claims regarding his residual functional capacity, stating:

> When at the examination by Dr. Kelley, the claimant stated that he had not done illegal drugs, including cocaine. However, during his hospitalization it was revealed that he was using cocaine recently. He was downplaying his usage [claiming] he had not used them. (sic). In sum, the above residual functional capacity assessment is supported by the opinions of the DDS reviewer, and Dr. Kelley. The claimant's treating physicians have not offered opinions

> regarding limitations, however their clinical and diagnostic
> diagnoses are consistent with the above residual functional
> capacity assessment. The undersigned gives no weight to the
> claimant's claims. He stated that he has a recent cocaine habit, but
> he initially denied it at the consultative examination, raising
> questions regarding his truthfulness.

(R. 16).

However, the record does not support the ALJ conclusion that Stalling stated that he had a cocaine "habit." The plaintiff acknowledged that he advised the hospital that he had used cocaine three days before his admission on June 16, 2008. Stalling stated that this was his first use of cocaine in five years (R. 184). At that time, toxicology tests performed on Stalling were negative for cocaine or other drugs. (R. 199, 213). At the administrative hearing on September 1, 2010, Stalling testified that he was never a "big user" and that he had not used cocaine since his hospital admission in 2008 (R. 35). Dr. Kelley noted in her examination on December 23, 2008, that the plaintiff "denied drug use on the sheet today" but noted that the hospital admission from June 2008 noted cocaine use. (R. 306). From these meager facts, the ALJ concluded that Stalling had admitted to a "recent habit" and that his initial denial to Dr. Kelley warranted wholly discounting Stalling's credibility.

Similar circumstances were considered by the Court in <u>Kane v. Astrue</u>, 2012 WL 4510046 (W.D.N.Y. 2012)(Telesca, J.). In that case, the Court held that the ALJ improperly discounted the plaintiff's claims based upon an alleged inconsistency in statements made by the plaintiff regarding his prior drug use. The Court reasoned:

> The Court agrees with Kane that the ALJ erroneously discounted
> his credibility based on what she described as a discrepancy
> between his testimony about his cocaine usage and his statements
> to Dr. Baittle during the consultative examination. A reviewing

15

> "court need not defer to a credibility determination based on a misunderstanding or one-sided view of the evidence." ... [Mason v. Barnhart, 325 F.Supp.2d 885, 902 (E.D.Wis.2004)] (citing Wates v. Barnhart, 274 F.Supp.2d 1024, 1038 (E.D.Wis.2003)). Furthermore, the ALJ must comply with SSR 96–7p in evaluating credibility. E.g., Lopez v. Barnhart, 336 F.3d 535, 539–40 (7th Cir.2003). SSR 96–7p requires consideration of "the entire case record" and precludes the ALJ from disregarding a claimant's statements about the intensity and persistence of his symptoms or about the effect the symptoms have on his or her ability to work "solely because they are not substantiated by objective medical evidence." SSR 96–7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).
>
> In May 2009, Kane told Dr. Baittle that he had last used cocaine in March or February 2009, and noted that he currently had very minimal socialization because most of his friends are on drugs, and he did not want to be involved. ... At the hearing in October 2010, the ALJ asked how long it had been since he used illegal drugs. Kane replied, "that's been years." ... The ALJ characterized Kane's answer as stating that his last cocaine usage was "many years" ago and opined that this created a discrepancy between his testimony and his statements to Dr. Baittle. Although Kane's answer suggests that he had been drug-free for a longer time, the Court finds that this alleged inconsistency, standing alone, is not a reason to wholly discount his testimony.

Kane, 2012 WL 4510046 at *19.

The reasoning in Kane applies equally in the instant case. The ALJ's determination that Stalling had admitted to a recent cocaine "habit" is not supported by the evidence in the record. The inconsistency, if any, between his denial of drug use on the "sheet" presented to Dr. Kelley on December 23, 2008 and the statement contained in his hospital admission on June 16, 2008, standing alone, is not a sufficient basis to wholly discount the plaintiff's claims regarding his residual functional capacity. Thus, this matter should be remanded for further administrative proceedings on this issue as well.

16

Finally, Stalling argues that the ALJ failed to consider the fact that Dr. Ryan determined that the plaintiff "has significant limitations perhaps in his ability to make appropriate decisions" and that his evaluation of Stalling was "consistent with psychiatric problems which may interfere to some degree on a daily basis." (R. 314). The defendant argues that the ALJ did not need to consider this medical condition because during the administrative hearing Stalling denied having any mental problems. (Docket No. 14 at 4; R. 40). In light of the nature of psychological issues, testimony from a claimant that he does not have a psychological issue is not necessarily conclusive in the face of medical opinion to the contrary. Even when a claimant is represented by counsel, it is the well-established rule "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir.2009) (internal quotation marks and brackets omitted). Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir.2004)(internal quotation marks omitted). "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." Id. The ALJ erred in not developing the record relating to the nature and extent of any psychological impairment possessed by the plaintiff.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be VACATED and this matter be REMANDED for further administrative proceedings consistent with the above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

18

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
May 14, 2013